1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

UNITED AFRICAN-ASIAN
ABILITIES CLUB; DAVID
SINGLETARY; and ROY DAVIS
GASH,

                              Plaintiffs,

          v.

BUTTONWOOD INVESTMENT
GROUP, L.P.; and the STATE OF
CALIFORNIA,

                              Defendants.

CASE NO. 15cv0113 JM (WVG)

ORDER (1) DENYING ANTI-SLAPP
MOTION; (2) DENYING MOTION
TO DISMISS; (3) DENYING
MOTION TO STRIKE, FOR
SUMMARY JUDGMENT OR
SUMMARY ADJUDICATION,
AND FOR A PRELIMINARY
INJUNCTION; AND (4) DISMISSING
THE STATE WITHOUT PREJUDICE

Three motions are pending:  (1) Buttonwood Investment Group, L.P.'s
anti-SLAPP motion, (Doc. No. 8); (2) the State of California's motion to dismiss
for failure to state a claim, (Doc. No. 11); and (3) Plaintiffs' motion to strike, for
summary judgment or summary adjudication, and for a preliminary injunction,
(Doc. No. 12).  The motions were fully briefed and found suitable for resolution
without oral argument pursuant to Local Civil Rule 7.1(d)(1).

For the reasons set forth below, Plaintiffs' claims challenging SB 1186
are dismissed for lack of subject-matter jurisdiction, all three motions are denied,
and the State is dismissed from this action without prejudice.  Plaintiffs may file a
separate action against the State.  If Plaintiffs wish to proceed against Buttonwood,
they must file an amended complaint in this case against Buttonwood alone within
14 days after entry of this order.

**BACKGROUND**

This case is a putative class action against the State of California and Buttonwood, the owner of an apartment complex. Plaintiffs claim that a 2012 California enactment, SB 1186, is unconstitutional and discriminatory because it imposed special requirements for litigating state-law construction-access claims that do not apply to other litigants. They also assert claims against Buttonwood for construction-access violations at its apartment complex.

Plaintiffs provide the following account: Plaintiff Gash, who uses a wheelchair, encountered various construction-access barriers when he attempted to visit the rental office at Buttonwood's apartment complex in June 2014. Soon thereafter, he filed a lawsuit against Buttonwood in state court, asserting various construction-access violations. After Buttonwood was served in October 2014, it applied for a stay and an early evaluation conference. Under California law, both procedures are available to construction-access defendants who meet certain criteria. But, according to Plaintiffs, Buttonwood did not meet those criteria. Although Gash's attorney brought this to the attention of the state court, it required Gash to attend an early evaluation conference anyway.

So Gash decided to pursue his claims in federal court. He initiated the present action on January 19, 2015, (Doc. No. 1), and dismissed the state case without prejudice on February 9, 2015. He filed the operative, first amended complaint ("FAC") in this court on February 13, 2015. (Doc. No. 3.) In the present case, Gash is joined by Plaintiff Singletary, who also uses a wheelchair, and the United African-Asian Abilities Club, which advocates for the civil rights of people of African and Asian heritage who have disabilities.

Plaintiffs assert four causes of action against the State: (1) SB 1186 is preempted by the Americans with Disabilities Act ("ADA") because it discourages attorneys from pursuing ADA claims; (2) SB 1186 deprives citizens of the equal protection of the laws; (3) SB 1186 violates the freedoms of speech and press; and

15cv0113

(4) SB 1186 discriminates against people with disabilities, in violation of 42 U.S.C.

§ 1983, Section 504 of the Rehabilitation Act, and Title II of the ADA.[1,2]

Plaintiffs assert ten causes of action against Buttonwood:  (1) SB 1186 is preempted by the ADA; (2) SB 1186 deprives citizens of the equal protection of the laws; (3) failure to make reasonable accommodations, in violation of the federal Fair Housing Act; (4) failure to make alterations, in violation of Title III of the ADA; (5) failure to remove architectural barriers, in violation of Title III of the ADA; (6) failure to modify practices, policies, and procedures, in violation of Title III of the ADA; (7) failure to properly construct and/or make accommodations, in violation of California's Fair Housing and Employment Act; (8) denial of full and equal access, in violation of California's Disabled Persons Act ("the CDPA"); (9) failure to modify practices, policies, and procedures, in violation of California's Disabled Persons Act; and (10) violation of California's Unruh Civil Rights Act ("the Unruh Act").

Plaintiffs seek a declaration that SB 1186 is unconstitutional, an injunction requiring Buttonwood to remove the barriers at its apartment complex; damages under federal and state fair-housing laws, the CDPA, and the Unruh Act, all related to the alleged construction-access barriers; and attorney fees.

## C.   Buttonwood's Motion

On March 6, 2015, Buttonwood filed an anti-SLAPP motion.  (Doc. No. 8.) Plaintiffs opposed the motion on April 13, 2015, and objected to the evidence

---

[1]  To facilitate discussion, the court assigned numbers to Plaintiffs' legal theories.  Going forward, any amended complaint filed in this court should use unique, consecutive numbers, rather than outline-style numbering, to number paragraphs, see Fed. R. Civ. P. 10(b), and should identify each legal theory as a separate count, see Bautista v. Los Angeles Cnty., 216 F.3d 837 (9th Cir. 2000) ("Separate counts will be required if necessary to enable the defendant to frame a responsive pleading or to enable the court and the other parties to understand the claims." (internal quotation marks omitted)).

[2]  The FAC mentions "the contract" in two places, apparently in reference to the Contract Clause.  Whatever contract claim there may be is so undeveloped that it does not warrant further discussion at this time.

1    Buttonwood submitted with its motion.  (Doc. Nos. 19–20.)  Buttonwood replied
2    on April 20, 2015.  (Doc. No. 22.)
3    **D.     The State's Motion**
4         On March 27, 2015, the State filed a motion to dismiss for failure to state
5    a claim, asserting that Plaintiffs' claims are barred by the Eleventh Amendment
6    and that they also fail to state a claim for relief.  (Doc. No. 11.)  Plaintiffs opposed
7    the motion on April 13, 2015, and requested judicial notice of a number of items.
8    (Doc. Nos. 21 & 21-29).[3]  The State replied on April 20, 2015.  (Doc. No. 23.)
9    **E.     Plaintiffs' Motion**
10        On March 27, 2015, Plaintiffs filed a motion to strike, for summary
11   judgment or summary adjudication, and for a preliminary injunction, (Doc. Nos.
12   12–16), and requested judicial notice of a number of exhibits, (Doc. No. 12-2).
13   Buttonwood and the State each filed responses on April 13, 2015.  (Doc. Nos. 17
14   & 18.)  Plaintiffs replied on April 20, 2015, objected to some of the evidence
15   Buttonwood submitted with its opposition, and requested judicial notice of several
16   more exhibits.  (Doc. Nos. 24, 24-1, 26, and 26-1.)
17   **F.     Request for Further Briefing**
18        After preliminary review of the filings, the court requested briefing on
19   whether the State and Buttonwood are properly joined if the constitutional claims
20   against Buttonwood are dismissed.  (Doc. No. 28.)  The parties responded on June
21   15, 2015, (Doc. Nos. 29–31), and replied on June 22, 2015, (Doc. Nos. 32–34).
22   ///
23   ///
24   ///
25
26        [3]  Plaintiffs' request for judicial notice was attached to their opposition and
     filed as an attachment, following more than 20 exhibits.  Several other items were
27   presented in similar fashion.  Going forward, requests for action by the court should
     be filed separately and should be brought to the court's attention in the relevant
28   motion.

**DISCUSSION**

Both Defendants identified a number of issues that implicate this court's subject-matter jurisdiction.  The court addresses these threshold issues before turning to what remains of the parties' motions and whether Defendants are properly joined in this action.

**A.    Standing and Mootness**

**1.    Legal Standards**

"Article III of the United States Constitution limits federal court jurisdiction to actual, ongoing cases or controversies." Wolfson v. Brammer, 616 F.3d 1045, 1053 (9th Cir. 2010).  Federal courts are obligated to address issues that affect their subject-matter jurisdiction, even if the parties do not. See Gonzalez v. Thaler, — U.S. —, 132 S. Ct. 641, 648 (2012).  The party invoking federal jurisdiction has the burden of establishing standing "for each claim he seeks to press and for each form of relief that is sought." Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008) (internal quotation marks omitted).  Federal courts do not have jurisdiction if the plaintiff lacks standing or if a claim is moot. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102 (1998) (standing); Iron Arrow Honor Society v. Heckler, 464 U.S. 67, 70 (1983) (mootness).

Standing is the question of whether the party seeking relief has a sufficient personal stake in the outcome of the controversy. See Flast v. Cohen, 392 U.S. 83, 99 (1968).  To have standing, a plaintiff must have suffered (1) an injury, (2) that is fairly traceable to the alleged action of the defendant, and (3) likely to be redressed by the requested relief. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).  Plaintiffs seeking declaratory and injunctive relief must demonstrate that they are "realistically threatened by a *repetition* of the violation." Gest v. Bradbury, 443 F.3d 1177, 1181 (9th Cir. 2006).  The presence in a suit of at least one plaintiff with standing suffices to make a claim justiciable. Brown v. City of Los Angeles, 521 F.3d 1238, 1241 n.1 (9th Cir. 2008).

15cv0113

1  An organization that satisfies the standing requirements may sue on its

2  own behalf.  See La Asociacion de Trabajadores de Lake Forest v. City of Lake

3  Forest, 624 F.3d 1083, 1088 (9th Cir. 2010).  To establish the required injury, the

4  organization must have "suffered both a diversion of its resources and a frustration

5  of its mission."  Id. (internal quotation marks omitted).  An organization may

6  alternatively sue on behalf of its members if (1) at least one identified member

7  has standing; (2) the interests the organization seeks to protect are germane to the

8  organization's purpose, and (3) the participation of individual members is not

9  required.  See Associated Gen. Contractors of Am. v. California Dep't of Transp.,

10  713 F.3d 1187, 1194 (9th Cir. 2013).

11  The "elements of standing must be supported in the same way as any

12  other matter for which a plaintiff bears the burden of proof, i.e., with the manner

13  and degree of evidence required at the successive stages of the litigation."  Gest,

14  443 F.3d at 1181.  "It is a long-settled principle that standing cannot be inferred

15  argumentatively from the pleadings, but rather must affirmatively appear in the

16  record."  FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) (citation and

17  internal quotation marks omitted), overruled on other grounds by City of Littleton

18  v. Z.J. Gifts D-4, LLC, 541 U.S. 774 (2004); see also Bender v. Williamsport Area

19  Sch. Dist., 475 U.S. 534, 547 (1986) ("[T]he necessary factual predicate may not

20  be gleaned from the briefs and arguments themselves.").  "At the pleading stage,

21  general factual allegations of injury resulting from the defendant's conduct may

22  suffice."  Lujan, 504 U.S. at 561.  At summary judgment, however, the plaintiff can

23  no longer rest on the allegations, but must set forth by affidavit or other evidence

24  "specific facts" showing that the standing requirements are met.  Id.

25  "Mootness can be characterized as the doctrine of standing set in a time

26  frame:  The requisite personal interest that must exist at the commencement of

27  the litigation (standing) and must continue throughout its existence (mootness)."

28  Foster v. Carson, 347 F.3d 742, 745 (9th Cir. 2003).  If there is no possibility that

1    the court can grant relief, a claim is moot and must be dismissed.  See id.

2        **2.    Plaintiffs' Standing to Challenge SB 1186**

3        Plaintiffs assert a number of claims against Buttonwood and the State

4    challenging SB 1186.  As for remedies, they seek a declaration that SB 1186 and

5    its codifications are unconstitutional, as well as a preliminary injunction.  As

6    noted, these forms of relief require allegations (at the pleading stage) and proof

7    (at summary judgment) that at least one plaintiff is likely to suffer an injury that

8    can be redressed by the requested relief.

9        The problem here is that Plaintiffs have not alleged or shown that any

10   of them personally have been or likely will be injured because of SB 1186.  They

11   state that they have disabilities, some have pending access suits that are subject

12   to SB 1186, Gash's case against Buttonwood involved a stay and early evaluation

13   conference, and a UAAAC member named Davis must attend early evaluation

14   conferences in some of his cases.[4]  However, none of them say that they have

15   been injured or likely will be, nor do they identify the nature of their injuries.

16   Because their legal theories are not tethered to an account of anyone's experience

17   with SB 1186, several are too theoretical to make sense of.  For example, there is no

18   sign of how SB 1186 has violated the freedom of the press, and the State was unable

19   to identify the rights at stake in Plaintiffs' Title II ADA claim, which it needed to do

20   so that it could defend itself.  Perhaps the relevant injuries might be inferred from

21   Plaintiffs' arguments and the fact that some of them have cases pending.  But, as

22   discussed earlier, that is not enough.  See Bender, 475 U.S. at 547 ("[T]he necessary

23   factual predicate may not be gleaned from the briefs and arguments themselves.").

24       Additionally, as Buttonwood and the State observe, and Plaintiffs do not

25   dispute, the stay and early evaluation procedures Plaintiffs object to were created

26

27       [4]  The allegations are in the FAC, (Doc. No. 3), and the declarations are
28   attached to Plaintiffs' motion for summary judgment, (Doc. No. 12, Exhs. 3–6).

1    by an earlier bill, SB 1608 (2008), which Plaintiffs do not challenge.[5]  SB 1186

2    expanded the categories of defendants who are eligible for these procedures, and

3    it imposed other requirements, such as a prohibition on pre-litigation demand

4    letters.[6]  Because the stay and early evaluation conference were created by an

5    earlier bill, an order declaring SB 1186 unconstitutional would leave them intact.

6    Thus, Plaintiffs' claims, as presented, appear not to be redressable.

7          Last, there are additional problems with the preemption and equal-protection

8    claims against Buttonwood.  The only nexus between Buttonwood and SB 1186

9    was its application for the stay and early evaluation conference in the state-court

10   litigation against Gash.  As Buttonwood points out, however, Gash mooted any

11   possible claim for prospective relief related to those claims when he dismissed

12   the state case.  And, critically, if SB 1186 is unconstitutional, there is no way to

13   hold Buttonwood, a private entity, liable for its enactment or its continued effect.

14         Accordingly, the claims challenging SB 1186 must be dismissed for lack of

15   subject-matter jurisdiction.  The claims against Buttonwood challenging SB 1186

16   are dismissed with leave to amend so that Plaintiffs can attempt to address these

17   issues.  If Plaintiffs wish to reassert these claims against Buttonwood, they must

18   verify first that there is a colorable legal basis for them.  The time for filing an

19   amended complaint against Buttonwood and the claims against the State are

20   addressed further below.

21         **3.     Tester Standing**

22         At various points, Plaintiffs and Buttonwood argue about "tester" standing.

23   Plaintiffs encourage the court to recognize tester standing, while Buttonwood

24   contends that Gash does not have standing to assert the construction-access claims

25   _____

26         [5]   SB 1608 can be found at 2008 Cal. Legis. Serv. Ch. 549 (West), and on
     the California Legislature's website at http://www.leginfo.ca.gov.

27         [6]   SB 1186 can be found at 2012 Cal. Legis. Serv. Ch. 383 (West), and on

28   the California Legislature's website at http://www.leginfo.ca.gov.

because he is a tester, rather than a legitimate patron.

The court does not address this issue for now.  Gash appears to satisfy the standing requirements for construction-access claims in the Ninth Circuit.  <u>See</u> <u>Ervine v. Desert View Reg'l Medical Cnty. Holdings, LLC</u>, 753 F.3d 862, 867 (9th Cir. 2014).  And, although the parties indicate that the Ninth Circuit has not addressed the issue of "tester" standing, they did not provide any reasoned account of why this court should do so here.  The court turns next to what remains of the parties' motions.

**B.      Buttonwood's Motion**

Buttonwood moves for an order striking the FAC, a stay, and attorney fees and costs under California's anti-SLAPP statute, California Code of Civil Procedure § 425.16.  (Doc. No. 8.)

**1.      The Parties' Objections**

Both parties filed objections related to Buttonwood's motion.  (Doc. Nos. 20 & 22-2.)  Plaintiffs object that Buttonwood's exhibits are irrelevant, lack foundation, are hearsay, or are privileged under California Civil Code § 47. Buttonwood objects that Plaintiffs' attorney's declaration cited two sanction orders that are being appealed to the Ninth Circuit.

The objections are overruled because neither party provided the necessary legal authority.  Plaintiffs did not provide authority holding that the court can consider only admissible evidence in the first stage of the anti-SLAPP analysis, and Buttonwood did not provide any support for its argument that the declaration and any references to the sanction orders should be stricken.

The court has no obligation to address such unsupported arguments.  <u>See,</u> <u>e.g.</u>, <u>Asetek Danmark A/S v. CMI USA, Inc.</u>, — F. Supp. 3d —, 2015 WL 1848967, at *15 (N.D. Cal. Apr. 21, 2015) ("[C]laims, defenses, theories, and arguments must be articulated and be presented with proper support in order for them to be considered by the court.").

1        **2.      Legal Standard**

2        "California law provides for the pre-trial dismissal of certain actions, known

3    as Strategic Lawsuits Against Public Participation, or SLAPPs, that masquerade

4    as ordinary lawsuits but are intended to deter ordinary people from exercising their

5    political or legal rights or to punish them for doing so."  Makaeff v. Trump Univ.,

6    LLC, 715 F.3d 254, 261 (9th Cir. 2013) (internal quotation marks omitted).

7        Although the statute providing for an anti-SLAPP motion is codified as a

8    state procedural rule, anti-SLAPP motions can be used in federal court.  See Batzel

9    v. Smith, 333 F.3d 1018, 1025–26 (9th Cir. 2004); Vess v. Ciba-Geigy Corp. USA,

10   317 F.3d 1097, 1109 (9th Cir. 2003).  However, an anti-SLAPP motion in federal

11   court can only be used to challenge state-law claims.  See Hilton v. Hallmark Cards,

12   599 F.3d 894, 901 (9th Cir. 2009).

13       To prevail, "the moving defendant must make a prima facie showing that

14   the plaintiff's suit arises from an act in furtherance of the defendant's constitutional

15   right to free speech."  Makaeff, 715 F.3d at 261.  "The burden then shifts to the

16   plaintiff . . . to establish a reasonable probability that it will prevail on its claim in

17   order for that claim to survive dismissal."  Id.

18       The plaintiff's subjective intent in bringing the lawsuit is not relevant.  See

19   City of Cotati v. Cashman, 29 Cal. 4th 69, 74 (2002).  "[A] claim filed in response

20   to, or in retaliation for, threatened or actual litigation is not subject to the anti-

21   SLAPP statute simply because it may be viewed as an oppressive litigation tactic."

22   Id. at 78.  Rather, "the critical point is whether the  plaintiff's cause of action itself

23   was *based on* an act in furtherance of the defendant's right of petition or of free

24   speech."  Id.

25       **3.      Plaintiffs' Claims**

26       The federal constitutional claims against Buttonwood have been dismissed,

27   and Plaintiffs' remaining federal claims, under the federal Fair Housing Act and

28   Title III of the ADA, are not subject to an anti-SLAPP motion in federal court.

1  See Hilton, 599 F.3d at 901 ("[T]he anti-SLAPP statute does not apply to federal

2  causes of action.").  Hence, Buttonwood's motion to strike these claims is denied.

3          Four state-law claims remain, all related to the alleged access barriers

4  at Buttonwood's apartment complex:  failure to properly construct and/or make

5  accommodations, in violation of California's Fair Housing and Employment Act;

6  denial of full and equal access, in violation of California's Disabled Persons Act;

7  failure to modify practices, policies, and procedures, in violation of California's

8  Disabled Persons Act; and violation of California's Unruh Civil Rights Act.  Unlike

9  the federal claims, these claims are subject to an anti-SLAPP motion.

10          The court has reviewed Buttonwood's arguments and the evidence it

11  submitted.  Buttonwood argues, in sum, that this case was filed to penalize it for

12  what it said and wrote in the state-court litigation against Gash.  Plaintiffs filed this

13  case shortly after Buttonwood applied for the stay and early evaluation conference

14  in state court, shortly after Buttonwood's attorney questioned Gash's standing to

15  litigate as a serial plaintiff and represented to the state court that Gash's attorney has

16  dismissed hundreds of class-action lawsuits without ever getting a class certified or

17  passing on the proceeds to class members.  Further, according to Buttonwood, this

18  lawsuit was unnecessary because the state court was already preparing to determine

19  whether Buttonwood's proposed modifications eliminated the need for injunctive

20  relief.

21          These circumstances do suggest that this case may have been filed to

22  retaliate against Buttonwood for what it said and did in state court.  The problem

23  for Buttonwood is that Plaintiffs' motivations are not relevant; what matters is the

24  conduct that forms the basis of their claims.  See Navellier v. Sletten, 29 Cal. 4th 82,

25  89 (2002) ("That a cause of action arguably may have been 'triggered' by protected

26  activity does not entail that it is one arising from such.").  The conduct underlying

27  Plaintiffs' state-law claims—the only claims in this case subject to an anti-SLAPP

28  motion—is the same as when Gash filed them in state court, i.e., Buttonwood's

1  alleged failure to make its facility accessible, not any protected activity by

2  Buttonwood.

3      Accordingly, Buttonwood's anti-SLAPP motion and its related requests for

4  a stay and attorney fees and costs are denied.

5  **C.    The State's Motion**

6      The State moves to dismiss the claims against it.  (Doc. No. 11.)  These

7  claims have all been dismissed for lack of subject-matter jurisdiction, so the State's

8  motion must be denied as moot.  As discussed below, Plaintiffs may re-file these

9  claims in a separate action.

10  **D.    Plaintiffs' Motions**

11      **1.    Motion to Strike**

12      Plaintiffs move to strike some of the evidence Buttonwood submitted in

13  support of its anti-SLAPP motion.  (Doc. No. 12 at 3–6.)

14      Federal Rule of Civil Procedure 12(f) authorizes the court to strike from the

15  pleadings "any redundant, immaterial, impertinent, or scandalous matter."  Motions

16  to strike are disfavored and "are rarely granted in the absence of prejudice to the

17  moving party."  Harris v. Chipotle Mexican Grill, Inc., 303 F.R.D. 625, 628 (E.D.

18  Cal. 2014) (internal quotation marks omitted).

19      Plaintiffs have not identified any prejudice they will suffer if these items

20  remain in the record, so their motion to strike is denied.

21      **2.    Motion for Summary Judgment or Summary Adjudication**

22      Plaintiffs move for summary judgment or summary adjudication on their

23  claims challenging SB 1186.  (Doc. No. 12 at 6–24.)  These claims have been

24  dismissed for lack of subject-matter jurisdiction, so the motion is denied.  Plaintiffs'

25  related requests for judicial notice are denied, and their evidentiary objections are

26  overruled.

27      The court notes that Plaintiffs filed thousands of pages of evidence with their

28  motion, but cited and discussed only a few of the items in their moving papers.  The

1   court has no obligation to mine the record for evidence, and no duty to guess how

2   exhibits are relevant.

3   **3.     Motion for a Preliminary Injunction**

4          To obtain a preliminary injunction, a plaintiff must demonstrate that

5   (1) he is likely to succeed on the merits; (2) he likely to suffer irreparable harm in

6   the absence of preliminary relief; (3) the balance of equities tips in his favor; and

7   (4) an injunction is in the public interest.  See Winter v. Natural Res. Defense

8   Council, Inc., 555 U.S. 7, 20 (2008).  These factors are judged on a sliding scale.

9   See Arcamuzi v. Continental Air Lines, Inc., 819 F.2d 935, 937 (9th Cir. 1987).

10  "Under any formulation of the test, the moving party must demonstrate a significant

11  threat of irreparable injury."  Id.

12         Plaintiffs contend that they are likely to succeed on the merits because

13  SB 1186 is facially discriminatory; irreparable injury is likely because they must

14  comply with SB 1186 or face sanctions; the balance of equities tips in their favor

15  because they must verify their complaints under penalty of perjury and attend

16  conferences other litigants are not required to attend, which impedes their access

17  to court; and there is a strong public interest in enforcing disability-rights laws.

18         Plaintiffs are not likely to succeed on the merits because they have not

19  established that they have standing to raise these claims.  They also have not

20  demonstrated that they are likely to suffer irreparable harm.  As the State observes,

21  they did not identify any harm that will flow from having to comply with SB 1186,

22  they did not support their arguments with any legal authority, and they did not cite

23  any evidence demonstrating that any harm is likely.  Additionally, Plaintiffs did

24  not say what they want the injunction to do.  The court declines to guess.

25         Accordingly, Plaintiffs' motion for a preliminary injunction is denied.

26  **E.     Misjoinder**

27         Federal Rule of Civil Procedure 20(a)(2) provides that defendants may be

28  joined in an action if (1) the claims arise out of the same transaction or occurrence,

and (2) a question of law or fact is common to all defendants.  Federal Rule of Civil Procedure 21 provides that misjoinder is not a ground for dismissing an action, but the court may add or drop a party or sever claims, either on its own motion or on motion by a party.

Where the parties are not properly joined under Rule 20, "it is accepted practice under Rule 21 to dismiss all defendants except for the first named in the complaint; this operates as a dismissal of plaintiffs' claims against other defendants without prejudice."  Armstead v. City of Los Angeles, 66 F. Supp. 3d 1254, 1263 (C.D. Cal. 2014); see also Visendi v. Bank of Am., N.A., 733 F.3d 863, 870–71 (9th Cir. 2013).  Before dismissing a party for misjoinder, the court must consider whether dismissal will result in prejudice.  See Rush v. Sport Chalet, Inc., 779 F.3d 973, 975 (9th Cir. 2015).  No prejudice will result from dismissal if the plaintiff can institute a separate action and proceed separately.  See, e.g., Kenney v. City of San Diego, 2014 WL 4792951, at *4 (S.D. Cal. 2014).

Here, regardless of whether Plaintiffs can amend the complaint to allege a viable claim against Buttonwood related to SB 1186, Buttonwood and the State are not properly joined as defendants.  The claims against Buttonwood are related to its purported misuse of the stay and early evaluation procedures and the construction-access barriers at its apartment complex, and the claims against the State are related to its enactment of a purportedly unconstitutional and discriminatory law.  These claims share a thin common connection with SB 1186, but nothing more.

The State proposes dismissing it from this case without prejudice so that Plaintiffs can file a separate action against it, and it contends that Plaintiffs will not suffer any prejudice if the court does so.  (Doc. No. 29.)  Plaintiffs propose severing the cases but leaving them related, and that they will be prejudiced by having to re-file this case and all of the motion paperwork.  (Doc. No. 34.)

Plaintiffs did not identify any substantial prejudice they will suffer if the claims against the State are dismissed and must be litigated separately.  These

1  actions should have been filed separately from the outset, and Plaintiffs would

2  have had to re-file their motion paperwork because of the standing and mootness

3  problems discussed earlier.  Conversely, Buttonwood and the State would be injured

4  by having to continue to litigate these entirely unrelated claims together.

5         Accordingly, the State is dismissed from this action without prejudice.

6  Plaintiffs may file a separate action against the State after paying filing fees and

7  following the usual procedures.  That action will be assigned a new case number

8  and will proceed separately from this one.  The present complaint, which stands

9  against Buttonwood alone, must be amended to reflect only the claims and legal

10 theories against Buttonwood.  Plaintiffs have 14 days after entry of this order to

11 amend the complaint against Buttonwood.

12                                **CONCLUSION**

13        Based on the foregoing, the court orders as follows:

14    1.    Plaintiffs' claims challenging SB 1186 are DISMISSED for lack

15          of subject-matter jurisdiction.

16    2.    Buttonwood's anti-SLAPP motion, (Doc. No. 8), is DENIED.

17    3.    The State's motion to dismiss, (Doc. No. 11), is DENIED.

18    4.    Plaintiffs' motion to strike, for summary judgment or summary

19          adjudication, and for a preliminary injunction, (Doc. No. 12),

20          is DENIED.

21    5.    The State is dismissed from this action without prejudice.

22    6.    Plaintiffs may file a separate action against the State, which will

23          be assigned a new case number.

24    7.    If Plaintiffs wish to proceed against Buttonwood, they must file

25 / / /

26 / / /

27 / / /

28 / / /

15cv0113

an amended complaint in this case against Buttonwood alone within
14 days after entry of this order.

IT IS SO ORDERED.

DATED:  August 20, 2015

Hon. Jeffrey T. Miller
United States District Judge